IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDGAR LEIVA,

      Plaintiff,

v.                                                        No. 15-cv-0040 SMV

CAROLYN W. COLVIN,
**Acting Commissioner of Social Security Administration,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 21] ("Motion"), filed on September 15, 2015. The Commissioner responded on November 12, 2015.  [Doc. 23].  Plaintiff replied on December 9, 2015.  [Doc. 24].  The parties have consented to the undersigned's entering final judgment in this case.  [Doc. 8].  Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing certain medical opinions.  Therefore, the Motion will be granted, and the case will be remanded for further proceedings consistent with this opinion.  *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

**Procedural Background**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on June 25, 2011.  Tr. 10.  He alleged a disability-onset date of April 15, 2010.  *Id*.  His claim was denied initially and on reconsideration.  *Id*.  Plaintiff requested a hearing before an ALJ.  *Id*.  On February 13, 2013, ALJ James A. Burke presided over a hearing in Albuquerque, New Mexico.  Tr. 10, 26–35.  Plaintiff appeared in person with his attorney.  Tr. 26–35.  The ALJ heard testimony from Plaintiff.  *Id.*

The ALJ issued his unfavorable decision on August 22, 2013.  Tr. 10–19.  At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  Tr. 12.  Accordingly, the ALJ proceeded to step two, where he found that Plaintiff suffered from the following severe impairments: "social phobia, antisocial and narcissistic personality traits[,] and substance abuse disorder in early partial remission[.]"  Tr. 12.  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  Tr. 12–14.

Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess Plaintiff's RFC.  Tr. 14–17.  The ALJ found that

> [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: he retains the ability to remember, understand[,] and carry out simple and detailed instructions but not complex ones; he is able to work on a brief superficial level and to complete a routine workday that does not involve interacting with the general public and performing work primarily working with things.  He is able to concentrate for two hours at a time.

Tr. 14.

At step four, the ALJ found that Plaintiff was unable to return to his past relevant work as a forklift operator. Tr. 17. Having found that Plaintiff could not return to his past relevant work, the ALJ proceeded to the fifth step. There, he applied medical-vocational guideline ("grid") 204.00 as a framework. Tr. 17–18. He found that Plaintiff's nonexertional limitations (i.e. being limited to working primarily with things rather than people) had "little or no effect on the occupational base of unskilled work at all exertional levels." Tr. 18 (citing Social Security Ruling "SSR" 85-15). Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and he denied the claim. Tr. 18–19. The Appeals Council denied Plaintiff's request for review on December 17, 2014. Tr. 1−5. Plaintiff timely filed the instant action on January 14, 2015. [Doc. 1].

## Analysis

The Motion will be granted, and the case will be remanded because in weighing the opinions of Dr. Spies, Dr. Valle, and Dr. Smith, the ALJ failed to apply the correct legal standards.

### In formulating the RFC assessment, the ALJ failed to apply the correct legal standards to the opinions of Dr. Spies and Dr. Valle.

Plaintiff argues that remand is warranted because the ALJ failed to apply the correct legal standards[3] in evaluating the opinions of consultative examiners Shari Spies, PsyD, and Valerie Valle, PsyD. [Doc. 21] at 14–19. The ALJ described these opinions in explaining his RFC assessment. Tr. 16–17. He accorded "some weight" to Dr. Spies' opinion and found that "most" of Dr. Valle's opinion supported his RFC assessment. Tr. 16, 17. Plaintiff does not take

---

[3] Specifically, Plaintiff argues that the ALJ's RFC cannot be supported by substantial evidence because he "improperly ignored or rejected" the medical opinions. [Doc. 21] at 14.

issue with the ALJ's rejection of portions of the opinions. *See* [Doc. 21] at 14–19. Rather, he argues that the ALJ impermissibly *failed to explain* his reasons for choosing not to accept portions of the opinions (and thus not reflect those portions in the RFC assessment). *Id.* at 14–15 (citing §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-6p). Plaintiff argues that the ALJ erred in failing to adequately explain his reasons for rejecting portions of the opinions. [Doc. 21] at 14−19. The Court agrees.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Ultimately, ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

In this case, the Court finds that the ALJ failed to apply the correct legal standard in evaluating the opinions of Dr. Spies and Dr. Valle.  The ALJ rejected portions of their opinions but impermissibly failed to explain why.  Specifically, both doctors opined that Plaintiff was limited in his ability to get along with supervisors, coworkers, and the general public.  Tr. 447 (Dr. Spies' opinion), Tr. 568 (Dr. Valle's opinion).[4]  The ALJ did not indicate (nor does the Commissioner suggest) that these opinions were contradicted by the record.  *See* Tr. 10–19; [Doc. 23].  In fact, in another portion of his decision, the ALJ found that Plaintiff's social functioning was moderately limited due to his "difficulties being around others."  Tr. 13.

Although the ALJ repeated the doctors' findings, the RFC assessment includes no limitation on Plaintiff's ability to interact with supervisors or coworkers.  The RFC assessment does indicate that Plaintiff cannot "interact[] with the general public[.]"  Tr. 14.  However, there is no limitation on Plaintiff's ability to interact and get along with supervisors or coworkers.  *Id.*  Because the ALJ did not include such limitations in the RFC assessment, he was required to explain why he rejected them.  This he did not do.  Remand is warranted for this reason alone.

Defendant presents two equally unpersuasive arguments.  At some points, she argues that the ALJ did, in fact, limit Plaintiff's ability to interact with supervisors and coworkers in the RFC.  [Doc. 23] at 8, 13–14, 15, 23, 24.  The ALJ's decision, however, indicates otherwise.  Tr. 14.  The RFC speaks for itself.  It does not restrict Plaintiff's social interactions except as to the general public.  There simply is no restriction in dealing with supervisors or coworkers.  *Id.*

---

[4] Dr. Spies indicated that Plaintiff's "ability to get along with supervisors, coworkers, and/or the general public [wa]s markedly limited" and that he was "unable to communicate with supervisors, coworkers, and the general public."  Tr. 447.  Dr. Valle estimated that Plaintiff was "moderately limited" in his ability to interact with supervisors, coworkers, and the public."  Tr. 568.

At other points in her brief, the Commissioner appears to acknowledge that the ALJ rejected portions of Dr. Spies' and Dr. Valle's opinions (i.e., limitations on the ability to deal with supervisors and coworkers) but asserts that he explained himself. She gives three examples.

First, she points to the ALJ's finding that Plaintiff "did not exhibit functional limitations that would interfere with work activity at some level[.]" [Doc. 23] at 13 (citing Tr. 15–16). Defendant is correct that in explaining his weighing of Dr. Spies' opinion, the ALJ noted that "[d]espite the relatively recent use of cocaine and alcohol, [Dr. Spies] did not opine [that Plaintiff] could not work." Tr. 16. However, the Court fails to see how this finding in any way explains why the ALJ rejected the doctors' opinions that Plaintiff has trouble getting along with supervisors and coworkers. It is not enough.

Second, the Commissioner argues that the ALJ's evaluation of Dr. Spies' opinion (that is, rejecting any limitations on the ability to get along with supervisors and coworkers) is supported by "Plaintiff's absence of psychiatric treatment and favorable response thereto when he eventually began such, . . . and evidence as to his credibility[.]" [Doc. 23] at 14. The problem is that the ALJ did not provide these reasons himself. Thus, they amount to impermissible post hoc rationalizations. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (Reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision" and may not "supply[] possible reasons" for an ALJ's decision after the fact.). The ALJ himself did not provide these explanations for his findings, and thus, the Court may not rely on them.

Even if the ALJ had made the findings that the Commissioner offers, however, they would not be enough. Evidence of Plaintiff's own credibility (or lack thereof) is unrelated to the weighing of two medical opinions that Plaintiff has trouble dealing with supervisors and

8

coworkers.  They simply are not connected.  Similarly, rejecting limitations on Plaintiff's ability to get along with supervisors and coworkers based on a lack of psychiatric treatment or based on a positive response to treatment—without more—would be insufficient.  The reasons offered by the Commissioner are so attenuated from the medical findings at issue (i.e., restrictions in the ability to get along with supervisors and coworkers) that they could not provide for meaningful review, even if the ALJ had offered them, which he did not.

Third, Defendant asserts that the explanations for rejecting the opinions are to be found in a separate section of the decision.  [Doc. 23] at 13.  However, Defendant does not direct the Court to any particular section, and the Court cannot find any explanation regarding the rejected portions of the opinions (i.e., limitations in the ability to deal with supervisors and coworkers). *See* Tr. 10–19.

In sum, remand is warranted because the ALJ impermissibly failed to explain why he did not include any limitation on Plaintiff's ability to get along with supervisors and coworkers in the RFC (as both Dr. Spies and Dr. Valle had opined).

In formulating the RFC assessment, the ALJ failed to apply<br>the correct legal standards to the opinion of Dr. Smith.

Plaintiff argues that the ALJ erred in failing to explain why certain findings by Dr. Smith, a non-examining physician, were not accounted for in the RFC even though the ALJ gave the opinion "significant weight."  [Doc. 21] at 19 (citing Tr. 16).  In relevant part, Dr. Smith opined that Plaintiff had moderate limitations in the following areas:  ability to work in coordination with or in proximity to others without being distracted by them, Tr. 450; ability to accept instructions and respond appropriately to criticism from supervisors, Tr. 451; and ability to set realistic goals and make plans independently of others, *id.*  Dr. Smith further opined that Plaintiff

9

could relate appropriately to supervisors and coworkers only on a brief, superficial level. Tr. 452. None of these restrictions is accounted for in the ALJ's RFC assessment.[5] *Compare* Tr. 450–52 (Dr. Smith's opinion), *with* Tr. 14 (RFC assessment).

In 2007, the Tenth Circuit Court of Appeals published two cases that are illustrative here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE's") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court, therefore, remanded "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007).

Defendant does not address *Haga* or *Frantz*. Instead, she argues that the ALJ was not required to account for the disputed findings in the RFC. [Doc. 23] at 16–18. Defendant posits that because some of these findings were recorded in Section I of Dr. Smith's report, the ALJ was permitted, essentially, to ignore them. She argues that Section I is "merely a worksheet to aid in deciding the presence or degree of functional limitations and the adequacy of documentation, and does not constitute an RFC assessment." *Id.* at 16 (quoting POMS § DI 24510.060B.2) (internal brackets omitted). It is at Section III of the report where the doctor's "actual mental RFC assessment" can be found. *Id.* (citing POMS § DI 24510.060B.4). The

---

[5] Plaintiff impliedly argues that Dr. Smith's limitation on concentration is not adequately reflected in the RFC's limitation to unskilled work, but he makes no mention of the RFC's limitation to two hours of concentration. *See* [Doc. 21] at 24 n.26; *see also* [Doc. 24] at 7. Dr. Smith's finding of moderate limitation in the ability to maintain attention and concentration for extended periods, Tr. 450, is reflected in the RFC's limitation to concentration for two hours at a time, Tr. 14. The Court is not persuaded that more was required.

Commissioner explains that Dr. Smith "translated his [Section I] findings into an ultimate RFC [at Section III] for a range of at least unskilled work." *Id.* (citing Tr. 452). The implication is that the ALJ was only required to address the Section III findings. *See* [Doc. 23] at 17 ("[T]he ALJ's RFC determination here was consistent with Dr. Smith's *ultimate mental RFC determination*.") (emphasis added). This is not the first time Defendant has made this argument. It continues to be unpersuasive.[6]

As an initial matter, these sections of the POMS do not really advance the Commissioner's position. Even if Section I comprises "summary conclusions" as to functional limitations and does not reflect an RFC assessment, which is reserved only for Section III, *see* [Doc. 23] at 16, that is a far cry from the Commissioner's position, which is that the ALJ may ignore the findings in Section I. In fact, neither the POMS nor the instructions on the report itself say anything about how the ALJ should weigh the opinion.

Consistent with the POMS, the instructions for Section I state:

> This section is for recording summary conclusions derived from the evidence in file. Each mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis. Detailed explanation of the degree of limitation for each Category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment).

---

[6] To support her position, Defendant cites to *Atkinson v. Astrue*, 389 F. App'x 804, 807–08 (10th Cir. 2010). [Doc. 23] at 17. However, that case does not really help her. In *Atkinson*, the Tenth Circuit found that moderate limitations in the plaintiff's ability "to maintain attention and concentration for extended periods" and "to complete a normal workday and workweek without interruptions from psychologically based symptoms" did not preclude "non-complex work." 389 F. App'x at 807. In other words, the court found that the disputed limitations were sufficiently accounted for in the RFC's limitation to unskilled work. *Id.* This case is different. Dr. Smith's omitted limitations are not accounted for in the RFC here. To give just one example, Dr. Smith reckoned (as did Drs. Spies and Valle) that Plaintiff had at least some limitation in his ability to deal with supervisors and coworkers. Tr. 450−52. However, the ALJ's RFC does not include limitations on getting along with supervisors and coworkers. Tr. 14.

Tr. 450; *compare id.*, *with* POMS § DI 24510.060B.2.  Also consistent with the POMS, the Instruction for Section III states:

> Record the elaborations on the preceding capacities in this section.  Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed.  Explain your summary conclusions in narrative form.  Include any information which clarifies limitation or function.  Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations.

Tr. 452 *compare id.*, *with* POMS § DI 24510.060B.4.

Based on these instructions, Section I appears to contain the actual mental restrictions found by the mental health professional, while Section III is intended for more detailed elaboration and clarification of the limitations or "capacities" contained in Section I.  Thus, if a restriction identified in Section I is not mentioned in Section III, the form instructions indicate that the reviewer intended the restriction to stand without need for a more detailed explanation rather than, as Defendant posits, the limitation concerning that area of functioning is irrelevant.  The fact that Section III is to be completed after Section I suggests that it is intended to supplement Section I rather than to overrule it.  Accordingly, the two sections work together rather than contradict each other, which to the Court makes much more sense.  It would serve no useful purpose to have a mental health professional go to the trouble of identifying a number of restrictions in Section I if these notations were meaningless.  The aforementioned instructions contained on the Assessment Form lead the Court to believe that the limitations of Section I are intended to have relevance.  Therefore, the Court finds that Section I contains the actual restrictions concerning mental capacity found by the reviewer, and Section III provides additional explanation and clarification but does not negate the Section I restrictions.

As the Tenth Circuit has explained, an ALJ is not permitted "to turn a blind eye" to a doctor's assessment of moderate limitations regardless of whether they were recorded in Section I or Section III. *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (holding that ALJs may not rely on a consultant's suggested RFC assessment when that assessment fails to account for all of the "moderate" limitations identified by the consultant). Here, the ALJ was required either (1) to adopt Dr. Smith's opinion such that his findings were reflected in the RFC assessment, or (2) to reject the opinion (or any portion of it) and explain his reasons for doing so. *See* SSR 96-5, 1996 WL 374183, at *5; *Keyes-Zachary,* 695 F.3d at 1161; 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). The RFC assessment does not reflect all of Dr. Smith's assessed limitations, and the ALJ does not explain why he rejected some of them. Therefore, the Court finds that the ALJ did not apply the correct legal standards in evaluating Dr. Smith's opinion, and remand is required. *See Frantz*, 509 F.3d at 1302–03 (remanding where RFC failed to reflect moderate limitations identified in the doctor's report and also failed to explain the omission).

Besides, in this case, Dr. Smith recorded nothing in Section III. Tr. 452. His opinion as to the "ultimate mental RFC determination" was actually recorded in Section II. Tr. 451–52. The Commissioner makes no argument about the significance of Section II. *See* [Doc. 23]. More importantly, however, even in Dr. Smith's "ultimate mental RFC determination," he estimates that Plaintiff has a limited ability to "relate appropriately" with supervisors and coworkers. Tr. 452. This limitation is not included in the ALJ's RFC, and the ALJ does not explain why.

## Conclusion

The ALJ erred when he failed to either incorporate the opinions of Dr. Spies, Dr. Valle, and Dr. Smith into the RFC assessment or explain why not.[7]

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 21] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED**, and this case is **REMANDED** for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**

---

[7] These errors matter because if restrictions on Plaintiff's ability to get along with supervisors and coworkers were added to his RFC, application of the grids may not be appropriate. *See* SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) . . . to respond appropriately to supervision, coworkers, and usual work situations[.]  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base."); *Jaramillo v. Colvin*, 576 F. App'x 870, 877 (10th Cir. 2014) (interpreting this section of SSR 85-15 and holding that the analysis does not end with a finding of no "substantial loss," because even where SSR 85-15 does not mandate a finding of disabled (because there is no finding of "substantial loss"), the ALJ must still "identify and establish [the claimant's] ability to perform, some specific occupation(s), which—however few in themselves—encompass a significant number of available jobs.").